FILED

1    Name: Frank G.King,Esq. (SBN 35059)

2    Address: 2255 Miramonte Circle, West, Unit B

3    Palm Springs, CA 92264

4    Phone: (760) 202-4007

5    Fax: (760)699-5520

6

7

2011 JAN -7 PM 12: 09

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF
SANTA ANA

BY_____

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10    PAULA BILLAU            CASE NUMBER: **SACV11-00036 RNB**

11

12                  Plaintiff     To be supplied by the Clerk of

                                 The United States District Court

13           v.

14    SPECIALTY TRUST COMPANY, A MARYLAND CORP-

15    ORATION; ROBERT E.LAWLESS,(SEE PAGE 2)        **COMPLAINT**

16                  Defendant(s).

17      1. Jurisdiction in the within Court arises from both diversity of citizenship and under

18    sections of _ _ _ _

19    Securities Exchange Act and Insider Trading Securities Act of 1984.  As to diversity of citizenship

20    the action is between Plaintiff and Defendants: the former was at all material times a

21    citizen-resident of California, and Defendants, all but ROBERT E.LAWLESS and SPECIALTY

22    TRUST COMPANY, A MARYLAND CORPORATION, are citizens of the State of Nevada.

23    Defendant ROBERT E.LAWLESS is an Indiana Citizen-resident, and SPECIALTY TRUST

24    COMPANY A MARYLAND CORPORATION, is a Maryland citizen.  The Real Property subject

25    of the within action is located in the State of Arizona.

26      2.The case involves the sale and resale of shares of a REIT with trustee-management being in

27    SPECIALTY TRUST COMPANY.  Plaintiff is informed that the REIT qualified under the

28    registration provisions of the Securities and Exhchange Act.  The action is brought by an

Continuation of case names:

RENEE WAGNER, LANCE WAGNER, SANDRA WAGNER, BRUCE TEBBUTT, SUSAN TEBBUTT, NELLO GONFIANTINI, SPECIALTY FINANCIAL CORPORATION, A NEVADA CORPORATION, SPECIALTY MORTGAGE CORPORATION, A NEVADA CORPORATION.

- 2 -

1   Individual rests in the facts that the security interests referred to above were publicly

2   advertised in California, Nevada, and Arizona.  Defendants, Robert E. Lawless,

3   Renee Wagner, Lance Wagner and Sandra Wagner, at all material times were

4   Insiders as defined in the subject Act. Defendants, Robert E. Lawless and Renee

5   Wagner were officers, employees and/or directors of Defendants, Specialty Financial

6   Corporation and Specialty Mortgage Company, both Nevada Corporations.

7          3.Applicable provisions of the Federal Statutes above ,are: Section 16 of the

8   Securities Exchange Act of 1934; 15U.S.C.Section 78p.and augmented and amended by

9   The Insider Trading Securities Act of 1984; and Section 10(b) of 15 U.S.C. Section 78j(b)

10         4.At all material times all defendants had a financial and/or contractual interest in

11   the REIT of which Specialty Trust Company, a Maryland Corporation was the Trustee –

12   Manager thereof.  Defendant , Specialty Trust Company, through the sales activities of

13   Defendant, Specialty Financial Corporation, a Nevada Corporation sold shares of said

14   REIT and with the funds realized therefore, purchased as beneficiary ,a deed of trust

15   secured by real property in the City of Phoenix, Maricopa County, State of Arizona . The

16    subject deed of trust was advertised publicly by Defendants, Nello Gonfiantini, CEO of

17   Defendant, Specialty Financial Corporation, a Nevada Corporation, and Renee Wagner,

18   an employee of Specialty Financial Corporation, as being a First Deed of Trust.  The latter

19   Defendant Renee Wagner, specifically told Plaintiff that the subject deed of trust was

20   a first deed of trust, and that there were no prior liens on the subject property.  The

21   latter representation was made to Plaintiff on or about September 24,2007 by phone

22   between said Defendant in Nevada, and Plaintiff in California.

23         5.There was a loan made in June, 2006 by the REIT secured by a trust deed on

24   real property owned by Central & Buchanan, and Arizona LLC, and guaranteed by one

25   JOE PINSONNEAULT.  The principal of the loan was $7,150,000.00 bearing interest at

26   13.50% with interest payments of $80,437.50 due monthly without principal payments.

27   The broker and collection agent for SPECIALTY TRUST COMPANY was Defendant

28   - -

1 | SPECIALTY FINANCIAL CORPORATION. SPECIALTY FINANCIAL CORPORATION

2 | had contact with and did contact a group of potential investors, and - - -

3 | supplied for its principal SPECIALTY TRUST, various prospectus documents required of a

4 | REIT to provide potential investors.  These had been distributed to the original investors in

5 | shares of the REIT . No prospectus on the subject REIT was given to Plaintiff.

6 |       6.Representations in documents given to Plaintiff, included as a portion thereof,

7 | A LOAN SUMMARY for Loan #489-99535.  The said Loan Summary is attached

8 | hereto and marked, Exhibit "A", and is made a part hereof by this reference.  According to

9 | Exhibit "A", the collateral for the "loan" was the aforesaid property at the corner of Central

10 | and Buchanan Streets, Pheonix, Arizona. At all material times the said land was a vacant

11 | lot purchased by the borrower in 2004 for the sum of $1,800,000.00.  The stated lien

12 | position was a "lst Deed of Trust", but Exhibit "A" stated that the purpose of the loan was

13 | to pay off an existing lien, and setting up an "interest reserve" and for loan fees for making

14 | the subject loan.

15 |       7. At said date the borrower had some $42,840,000.00 of debt.  Some was

16 | unsecured and some secured, and representing several separate loans all except two

17 | which bore due dates at the same time as the subject loan.  The appraised value

18 | of the subject property was, in June,2006 when the loan was made ,$13,000,000.00. No

19 | improvements had been made on this vacant land since 2004 when purchased.  Exhibit

20 | "A" related that this value was based on anticipated rezoning of the lot and old industrial

21 | buildings nearby.  That without the rezoning the appraisal was still $11,000,000.00. No

22 | attempt in Exhibit "A" was made to explain the discrepancy between the $1,800,000.00

23 | the property cost the borrower in 2004 and the $11,000,000.00 that the property was

24 | appraised at two years later without rezoning, in 2006 when the subject loan was made.

25 | The sought for rezoning was from industrial with its decaying industrial buildings to

26 | commercial.  The Plaintiff is informed and believes and upon such information and belief

27 | alleges that except for the property value increases documented by public access that

28 | - -

1   Plaintiff is informed and believes that the said appraisal of 2006 set forth as

2   $13,000,000.00 if rezoned and at least at $11,000,000.00 was a grossly erroneous

3   inflated appraisal known to Defendants and each of them as being inflated in 2006 when

4   Defendants and each of them were in process of selling shares of the REIT.

5      7. Plaintiff is informed and believes at the time of the subject loan, commercial

6   Loans were generally limited to 50% of value.  Therefore it was significant for the

7   land to have a value of $13,000,000.00 when the loan sought was $7,500,000.00.  If that

8   appraisal was out of line, or suspicious, or needed explanation, the Defendants and each

9   of them had a duty to investigate prior to the sale of shares of the REIT owning the loan

10  being made to Plaintiff.  Defendants and each of them, knew or in the exercise of

11  reasonable care should have known that the appraisal was in fact suspicious and needed

12  investigation prior to sale of the shares of the REIT.

13     8. Plaintiff is informed and believes and therefore alleges that at all material times

14  prior to the sale of shares of the REIT to Plaintiff, Defendants had a duty to Plaintiff to

15  advise her of the suspicious appraisal, among other things hereinafter alleged.

16     9. Plaintiff at all material times since September ,2007 was in communication with

17  Defendants SPECIALTY FINANCIAL CORPORATION and RENEE WAGNER, for herself

18  and her joint venturer, MARVIN RANDALL, also a California citizen-resident.  At all mater-

19  ial times after December,2008 Plaintiff was the sole owner of the investment herein sued

20  about, due to the death of MARVIN RANDALL and inheritance of his interests therein.

21  Both, Plaintiff and MARVIN RANDALL,deceased at all material times were older persons

22  with prior direct ownership investments with Defendant SPECIALTY MORTGAGE

23  COMPANY, RENEE WAGNER, and  NELLO GONFIANTINI.  Plaintiff was told by

24  Defendant RENEE WAGNER , that Plaintiff would be buying, a percentage of a new loan

25  being made on property collateralized by a Deed of Trust.  Plaintiff was also told the value

26  of the property was $13,000,000.00 and the loan was $7,500,000.00,and that the land

27  value

28  - -

1 to loan were well covered by equity, and that interest would be paid monthly at 13.50%

2 annual rate.  Plaintiff was not told the investment was a purchase of shares of a REIT

3 from prior owners wishing to sell them.  Plaintiff was not told that as such a purchaser,

4 she was entitled to receive a full prospectus.  Plaintiff was told this land was about a

5 block and a half from a new Civic Center in Phoenix, Arizona and rezoning was pending

6 to commercial, and the land would skyrocket in value.  Plaintiff was told that the borrower

7 had substantial other commercial real property. Plaintiff was told that this was a first Deed

8 of Trust, and there were no prior liens on the property.

9       10.Plaintiff was not told that the property had a prior lien on the property.  Plaintiff

10 was not told that she was buying the shares of Defendant RENEE WAGNER'S husband,

11 and sister-in-law Defendants, LANCE WAGNER and SANDRA WAGNER, and the

12 shares of Defendant ROBERT E. LAWLESS, and those of Defendants BRUCE

13 TEBBUTTS, and SUSAN TEBBUTTS.

14       11.Based on what Plaintiff was told, and based on reliance on the facts as related

15 to her by Defendant, RENEE WAGNER ,Plaintiff and joint venturer  MARVIN RANDALL

16 paid to Defendant , SPECIALTY TRUST COMPANY, who Defendant RENEE WAGNER

17 directed her to pay, the sum of $100,000.00 on or about September 24,2007, and another

18 $24,000.00 December 4, 2007.

19       12.Defendants and each of them had insider information both from the original

20 prospectus, and from knowledge that the developer had a prior lien on the property, and

21 that the appraisal was erroneous and the developer was in trouble financially and that the

22 property was of a value less than the amount of the loan.  The Plaintiff did not have from

23 any independent source and was not told by Defendants or any of them, the information

24 defendants, and each of them had as insiders, and who wanted to not disclose that

25 insider information so that the selling insiders could unload their investment on the un-

26 suspecting Plaintiff, and avoiding a loss on their said investments.

27       13. Defendant RENEE WAGNER and Defendants SPECIALTY FINANCIAL

28 - -

1   CORPORATION, and NELLO GONFIANTINI sent to Plaintiff after her phone calls with

2   Defendant RENEE WAGNER and after sending to said Defendant, a check for

3   $100,000.00, a copy of Exhibit "A", and Exhibit "B" attached hereto and made a part

4   hereof by this reference, called ASSIGNEE FUNDING AUTHORIZATION.  Exhibit "B"

5   significantly requested payment for a loan to be made to Central &Buchanan LLC; no

6   reference was made to purchasing the shares of Defendant, SPECIALTY TRUST

7   COMPANY, in fact Exhibit B states "apply my (plaintiff's) funds to purchase a portion of

8   the loan as referenced above." It was further set forth therein that the application of the

9   funds were conditional upon recording an assignment of a deed of trust reflecting

10   plaintiff's beneficial interest .  This was the standard form used in the prior investments

11   plaintiff had made through Defendants SPECIALTY FINANCIAL CORPORATION ,

12   RENEE WAGNER, and  NELLO GONFIANTINI, and that is what Plaintiff relied on as no

13   information was given her regarding the REIT share purchase of shares owned by others.

14          14.Plaintiff was also given by Defendants SPECIALTY MORTGAGE

15   CORPORATION, and RENEE WAGNER a Mortgage Investment Disclosure form again

16   supporting the fact that plaintiff was buying a specific percentage interest in a trust deed

17   to be issued, and not the purchase of some other persons' shares  in a REIT .  The form

18   is attached hereto marked Exhibit "C" and made a part hereof by this reference.  It

19   reinforces the false fact that Plaintiff was buying an interest in an original trust deed loan,

20   with statements that purported to be Nevada State Requirements.  It also included the

21   statement that this transactions was  "The purchase of a promissory note that is secured

22   by a lien on real property (mortgage loan).." page 1of Exhibit "C".

23   - -

24   - -

25   - -

26   - -

27   - -

28   - -

15. From the REIT, SPECIALTY TRUST COMPANY, a Maryland Corporation, Defendant ROBERT E.LAWLESS an officer of said company, wrote a letter in the last part of 2007 on behalf of said REIT. As its CFO he stated ,inter alia, that there was "a severe credit crisis within the financial markets…and has made capital raising for many entities…substantially more difficult." The entire letter displaying an in depth knowledge of the mortgage lending market is set forth as Exhibit "D", and is made a part hereof by this reference. It is submitted that Defendant ROBERT E.LAWLESS will knew at all material times that his shares were being sold to Plaintiff, without her knowing either the facts set forth in Exhibit "D" or the fact that she was buying the shares of Defendant ROBERT E. LAWLESS.

16.Plaintiff absolutely would not have bought this investment at any price, if she knew that she was buying just a share of a REIT , and if she knew that she was buying the shares from an insider, and which insider knew how the economy being bad, could well affect in a negative way this investment as the borrower would have to get capital to pay its obligation to the REIT. She would not have bought this investment either if Defendant RENEE WAGNER had not told her the glowing facts about the investment alleged above . The investment is now in foreclosure and is valued to be about the same as the back taxes due to the County of Maricopa, State of Arizona, which is a lien prior to the investors in a REIT.

17. Plaintiff has lost interest at the rate contracted for at or about $1,300.00 per Month for two years to date. Plaintiff has also lost $124,000.00 in principal. She has had to downsize her expenses drastically, and has caused her to give up her residence and rent a one bedroom, one bath apartment, and causes her to be unable to pay her bills as they come due. Plaintiff also claims all the damages accorded to an investor in a REIT suffering the circumstances she has above alleged.

- -

- -

- -

Wherefore Plaintiff prays for judgment as follows:

1. the sum of $124,000.00 plus interest at 13.50% annually from and after September 24,2007.

2. Treble said sums for the insider trade to Plaintiff.

3. General Damages for fraud and misrepresentation in the amount of $200,000.00.

4. For costs of suit herein, and reasonable attorney fees expended herein.

5. For other relief according to statute and that is just in these circumstances.

Dated: December 7,2010

Frank G. King
Attorney for Plaintiff

# Loan Summary

Loan #489-99535

Date:   June 26, 2006
Property Type: Res/Land
Date Closed:

| | |
|---|---|
| Borrower | Central & Buchanan, an Arizona Limited Liability Company |
| Guarantor | Joe Pinsonneault |
| Loan Amount | $7,150,000.00 |
| Interest Rate | 13.50% |
| Default Rate | 19.50% |
| Amortization | Interest Only Payments Due Monthly ($80,437.50) |
| Interest Reserves | One year interest reserve ($965,250.00) to be established at the close of escrow.  There must be a minimum of 90 days interest in account at all times. |
| Appraised Value | $13,000,000.00 "as if rezoned"/$11,000,000.00 "as is" |
| LTV | 55% "as if rezoned/65% "as is" |
| Collateral | APN #112-23-082A, 112-23-082B<br>1.76 acres located on the Northwest Corner of Central Avenue and Buchanan Street, Phoenix, Maricopa County, Arizona 85007 |
| Partial Release | N/A |
| Cash Investment of Borrower | The property was purchased in October 2004 for $1,800,000.00 |
| Term | 24 Months |
| Automatic Extension | 12 month extension for 1.0% ($71,500.00) |
| Points | 2.50% to Specialty Mortgage Corp ($178,750.00) |
| Broker | Core Funding Group, George Bauder |
| Broker Fee | 1.0% to Core Funding ($71,500.00) |
| Lien Position | 1st Deed of Trust |
| Loan Purpose | Payoff existing lien, establish interest reserve account and loan fees |
| Maturity Date | 8-1-08 |
| Maturity Default | In the event that Borrower fails to pay the entire principal amount on or before the maturity date, Borrower shall pay an additional sum equal to 3% of the original principal loan amount |
| Payoff Notice | 30 days written notice prior to payoff…. If paid off sooner than 30 days, additional 60 days interest due |
| Risk Rating | |

1

Exhibit "A"        pg. 1

Related Borrower Debt:

| Loan No. | Borrower | Loan Balance &Committed SMT | Total Loan | Collateral | Maturity date |
|---|---|---|---|---|---|
| 477-99523 | Third Ave & Catalina | $21,500,000.00 | $21,500,000.00 | Land/Residential | 5-1-08 |
| 488-99534 | 5th & Catalina LLC | $6,325,000.00 | $6,325,000.00 | | 8-1-08 |
| 489-99535 | Central & Buchanan, LLC (subject property) | $7,150,000.00 | $7,150,000.00 | Land/Residential | 8-1-08 |
| 490-99536 | Oak Creek Condominiums, LLC | $3,872,000.00 | $3,872,000.00 | Land/Residential | 8-1-08 |
| 491-99537 | JFP 1330, LLC | $3,993,000.00 | $3,993,000.00 | Land/Residential | 8-1-08 |
| | | | | | |
| | Total | $42,840,000.00 | $42,840,000.00 | | |

Borrower:            Central & Buchanan. LLC
Mailing Address:     2630 North Granite Reef Road
                     Scottsdale, AZ  85257

Tax ID:              20-1725318

Guarantor(s)         Joe Pinconneault

Loan Amount:     $7,150,000.00

Interest Rate:    13.50%

Default Rate:        19.50%

Amortization:        Interest Only Payments Due Monthly ($80,437.50)

2

Exhibit "A"   pg 2

| | |
|---|---|
| Interest reserve: | One year interest reserve ($965,250.00) to be established at the close of escrow.  There must be a minimum of 90 days interest in account at all times. |
| Term: | 24 Months |
| Prepayment Penalty: | N/A |
| Fees: | 2.50% to Specialty Mortgage Corp ($178,750.00) |
| Name of Broker: | Core Funding Group, George Bauder |
| Broker fees: | 1.0% to Core Funding ($71,500.00) |
| Purpose of Loan: | Payoff existing lien, establish interest reserve account and loan fees |
| Use of Proceeds Detail: | $5,956,122.00 Payoff existing lien |
| | $  965,250.00 Interest Reserve |
| | $  178,750.00 Loan Fee |
| | $   71,500.00 Broker Fee |
| | $   77,031.25 int prorate and misc fees |
| | **$98,653.25 approx cash needed to close |
| Borrower's Cash/Equity: | The property was purchased in October 2004 for $1,800,000.00 |
| Lien Position: | 1st Deed of Trust |
| Partial releases: | N/A |
| Appraiser: | Cushman and Wakefield Timothy S. Love, MAI |
| Date of Appraisal: | May 26, 2006 |
| Appraised Value: | $13,000,000.00 "as if rezoned"/$11,000,000.00 "as is" |
| LTV: | 55% "as if rezoned"/65% "as is" |
| Collateral Description: | The subject property is located in the downtown Phoenix business district.  Downtown Phoenix today contains most of the building blocks of the new regional economy.  It is the regional center for |

pg.3

Exhibit "A"

government and entertainment.  A bigger convention center is being build as well as a new 20-mile light-rail transit system that connects Phoenix with Tempe and Mesa.

The property is located on the Northwest Corner of Central Avenue and Buchanan Street, Phoenix, Maricopa County, Arizona 85007.

The Central & Buchanan Condominiums is a proposed 387-unit condominium project.

| | |
|---|---|
| Flood Zone: | FEMA Flood Zone X |
| ALTA Survey: | Survey prepared Horizon Consultants of Arizona dated July 2005 |
| Phase I Report: | Report prepared by Enviro Geodetics, Inc., dated 10-5-2004 |
| Water/Water Rights: | Public-City of Phoenix |
| Sewer | Public-City of Phoenix |
| Utilities: | Southwest Gas-Gas<br>Arizona Public Service-Electricity |
| Zoning: | A-1 (Light Industrial) and W (Warehouse Overlay)<br>City of Phoenix |

Construction Loan Only:                N/A
    Name of Contractor:
    Contractor License #:
    Cost Breakdown reviewed by:
Projected Completion Date:

| | |
|---|---|
| Principal Source of<br>  Repayment: | Obtain development loan |
| Secondary Source of<br>  Repayment: | Sale subject property |
| Borrower: | Central and Buchanan LLC<br>Assets:          $13,000,000.00<br>Liabilities:    $ 7,150,000.00 |

*pg. 4*

*Exhibit "A"*

Net Worth:                  $ 5,850,000.00

Guarantor:              Personal Financial Statement for Joe Pinsonneault dated September
                        2005

                        Assets:              $22,020,000.00
                        Liabilities:         $ 6,350,000.00
                        Net Worth:           $15,670,000.00

                        AGI 2004             $144,084.00
                        AGI 2003             $214,796.00

Credit:                 Report prepared by Informative Research dated 4-11-06

                            Credit Score 702

Title Preliminary
Review:                 Report prepared by TSA Title Agency dated May 12, 2006

Comments:
**STRENGTHS;**

                        **Borrower has been acquiring and developing land for the last
                        25 years**

**WEAKNESSES:**

Recommendation:
                        1.       Evidence of rezoning

Exhibir "A"                                                    Pg 5

**Specialty Mortgage Corp.**
**6160 Plumas Street**
**Reno, Nevada 89519**
**(775) 826-0809 Phone**
**(775) 826-0166 Fax**

---

# ASSIGNEE FUNDING AUTHORIZATION
### Escrow Authorization to utilize assigns "Investor" funds

TO:   Specialty Mortgage Corp.
      6160 Plumas Street
      Reno, NV  89519

RE:   Loan #489-99535
      Central & Buchanan, LLC

You are hereby authorized to apply my/our funds to purchase a portion of the loan as referenced above.

It is understood and therefore conditional that application of my/our funds are conditional upon recording the Assignment of Deed of Trust reflecting my/our assignee beneficial ownership interest as:

Marv Randall and/or Paula Billau, as to an undivided 1.39860140% interest.

_Marv R Randall_                                    _9-27-07_
Marv Randall                                        Date

_Paula Billau_                                      _Sept. 24th 2007_
Paula Billau                                        Date

*Exhibit "B"  pg'*

**Specialty Mortgage Corp.**
**6160 Plumas Street**
**Reno, Nevada 89519**
**(775) 826-0809 Phone**
**(775) 826-0166 Fax**

## ASSIGNEE FUNDING AUTHORIZATION
### Escrow Authorization to utilize assigns "Investor" funds

TO:   Specialty Mortgage Corp.
      6160 Plumas Street
      Reno, NV  89519

RE:   Loan #489-99535
      Central & Buchanan

You are hereby authorized to apply my/our funds to purchase a portion of the loan as referenced above.

It is understood and therefore conditional that application of my/our funds are conditional upon recording the Assignment of Deed of Trust reflecting my/our assignee beneficial ownership interest as:

Marv Randall and/or Paula Billau, as to an undivided .33566434% interest.

_Marv Randall_                          _December 4 2007_
Marv Randall                            Date

_Paula Billau_                          _December 4th 2007_
Paula Billau                            Date

*Exhibit "B"   pg 2*

**SPECIALTY MORTGAGE CORP.**
**6160 PLUMAS STREET**
**RENO, NEVADA 89519**
**(775) 826-0809**

## MORTGAGE INVESTMENT DISCLOSURE FORM

IMPORTANT:  Pursuant to NRS 645B.185, each investor must sign and date a disclosure form before a mortgage broker or mortgage agent accepts money for the investment.  This form must be executed for each separate loan in which the investor invests money.  A mortgage broker or mortgage agent may not act as the investor's attorney in fact or agent in the signing or dating of this form and may not by agreement alter or waive these disclosure requirements.

Description of Loan:  #489-99535 Central and Buchanan

## BEFORE YOU INVEST IN A PROMISSORY NOTE SECURED BY AN INTEREST IN REAL PROPERTY, YOU SHOULD KNOW.......

The funding of a loan or purchase of a promissory note that is secured by a lien on real property (mortgage loan) is an investment that involves some risk.

An investment in a promissory note secured by a lien on real property usually through a deed of trust (mortgage loan or mortgage loan investment), like most investments involves risk that the investment will not perform as expected.  The mortgage broker with whom you are dealing is not a depository institution and a deed of trust investment is not secured by any depository insurance or insured or guaranteed by any agency of the State of Nevada or the Federal Government. Nevada law prohibits the mortgage broker with whom you are dealing from representing or even implying to you that he will ensure or guarantee that the investment will perform as expected. The borrower on the loan may default in required payments, and you may lose all or part of the principal amount you invested and/or the interest you expected to earn from the investment.

Some of the most significant factors that affect your risk in a mortgage loan investment include: (1) the knowledge, experience and integrity of the mortgage broker with whom you are dealing, (2) the market value and equity of the property that will secure the promissory note, (3) the borrower's financial standing and creditworthiness, (4) the escrow process involving the funding of the loan or purchase of the note, (5) the documents and instruments describing, evidencing and securing the loan, (6) the provisions regarding the collection and servicing of the loan, and (7) the provisions for enforcement of the deed of trust.

## You are entitled to information about the mortgage broker with whom you are investing.

**You are entitled to receive information regarding the mortgage broker with whom you are dealing from the Division of Mortgage Lending, which may be contacted at either one of the following locations:**

*Exhibit "C"*          *pg 1*

Division of Mortgage Lending
400 W. King Street, Ste 406
Carson City, Nevada 89703
(775) 684-7060

Division of Mortgage Lending
3075 E. Flamingo Street, Ste 104 A
Las Vegas, Nevada 89121
(702) 486-0780

You have the right to request the mortgage broker with whom you are dealing to authorize the Division of Mortgage Lending to release to you the most recent financial statement of the mortgage broker on the file with the Division. ___YES, I would like to review a financial statement. __✓__NO, I would not like to review a financial statement.

Disclosures required by subparagraphs (3) and (4) of paragraph (b) of subsection 6 of NRS 645B.185:

Has any disciplinary action been taken by the commissioner against the mortgage broker or any general partner, office of director of the mortgage broker within the preceding 12 months? _____ YES __✗__ NO. If yes, describe below:

_____

_____

Has the mortgage broker or any general partner, officer or director of the mortgage broker been convicted within the preceding 12 months for violating any law, ordinance or regulation that involves fraud, misrepresentation or a deceitful, fraudulent or dishonest business practice? _____ YES __✗__ NO. If yes, describe below:

_____

_____

You also have the right, pursuant to subsection 3 of NRS 645B.090, to ascertain from the Division of Mortgage Lending:

- Whether the Division of Mortgage Lending has disciplined the mortgage broker during the immediately preceding 5 years.
- The findings and results of any investigation against the mortgage broker pursuant to the provisions of chapter 645 B of NRS which was completed during the immediately preceding 5 years and which resulted in a finding by the Commissioner of Mortgage Lending that the mortgage broker committed a violation of a provision of Chapter 645B of NRS, chapter 645B of NAC or an order of the commissioner.

## You are entitled to have a written appraisal of the property that is to secure your deed of trust investment as well as other information relating to the property.

The law requires the mortgage broker with whom you are dealing to obtain and make available for your inspection a written appraisal of the real property which is to secure the mortgage loan investment unless you specifically waive in writing your right to have the appraisal performed. An appraiser who is licensed or certified to perform real estate appraisals in this state must perform the appraisal if the property is located in this state. The mortgage broker with whom you are dealing is prohibited from performing the appraisal or providing any estimate or opinion

*Exhibit "C" pg2*

In many cases, including those cases where the investments consist of "fractionalized" interests, i.e., ownership of less than 100% of the mortgage investment, the loan requires servicing by an authorized agent. Loan servicing includes collecting payments from borrowers, disbursing payments to investors or note holders, mailing of appropriate notices, monitoring the status of senior liens and encumbrances, maintaining adequate insurance coverage and coordinating foreclosure proceedings. The mortgage broker with whom you are dealing is authorized by Nevada law to act as the servicing agent for the mortgage loan he originate. It is recommended that all persons investing in a mortgage loan which will be serviced by a servicing agent execute a written servicing agreement that clearly specified the authority granted to the servicing agent. The servicing agreement should address issues such as: (1) the fees for servicing and how they are to paid; (2) the person who has the authority to instruct the trustee under the deed of trust to commence foreclosure proceedings in the event of a default: (3) how, in the case of a "fractionalized" note and deed of trust with multiple parties owning beneficial interests, the parties are to determine and direct the actions to be taken in the event of default or with respect to other matters that involve the enforcement of terms of the promissory note and/or deed of trust (Nevada law requires that the documentation pertaining to a note and deed of trust owned initially by more than one natural person included a provision by which record holders of 51% or greater specified percentage of the beneficial interests in the mortgage loan may direct certain actions that require direction or approval of the holders of beneficial interests); (4) the identity of the person responsible for holding the original promissory note and deed of trust; (5) how the loan servicing agreement may be terminated by the investors in the mortgage loan; (6) the right to obtain the names, addresses and phone numbers of other persons with beneficial interests in the loan; and (7) the monitoring of any senior liens.

A mortgage broker performing loan servicing has an obligation to account to the borrower and every investor for money collected and disbursed in the exercise of that function.

## You have the right to know whether the mortgage broker with whom you are dealing, or any relative of the mortgage broker, is acting in any capacity, or has any other interest, other than as a mortgage broker.

Nevada law required the mortgage broker with whom you are dealing to disclose to you whether he, or any relative of his, has any personal interest in the mortgage loan other that as a mortgage broker. For example, if the mortgage broker owns a 50% interest in the builder applying for a construction loan, the mortgage broker is required to disclose that interest to you. In addition, if a mortgage broker or relative of the mortgage broker is licensed as, conducts business as or holds a controlling interest or positions in (1) a construction control company, (2) an escrow agency, or (3) a title agent, a title insurer or an escrow officer of a title agent or title insurer, the mortgage broker must fully disclose that relationship to every investor, and may not require, as a condition to the acquisition or purchase of an interest in a mortgage loan, that the investor transact business with or use the services of the other business.

The mortgage broker, or a relative of the mortgage broker, has an interest in this loan in a capacity other that as mortgage broker. ___YES __X__ NO. If yes, explain below:

_____

_____

_Exhibit "C" pg3_

of the value of the property that is to secure the mortgage loan investment, unless the mortgage broker is certified or licensed to perform the appraisal pursuant to chapter 645C of NRS. You are entitled to a copy of the appraisal upon request.

_____ I waive my right to an appraisal for this loan _____ I wish to review an appraisal for this loan

_John P. Randall  9-27-07_

Investor Signature                                     Date _Sept 24th 2007_

In addition to a written appraisal, you are entitled to know whether the real property that will secure the loan is encumbered by any other liens and, if so, the priority of each such lien, the amount of debt secured by each such lien and the current status of that debt, including, without limitation, whether the debt is being paid or is in default.

The real property that will secure this loan is not encumbered by any another liens. If other liens exist, describe, for each lien:

Description:

Loan No.

Amount Encumbered: N/A

Priority:

Current Status:

## You are entitled to review information relating to the financial standing and creditworthiness of the borrower and documentation relating to the mortgage loan. Pursuant to NAC 645B.080, you will be asked to complete a form in which you acknowledge that you had the opportunity to receive and review that information and documentation.

## You are entitled to review documentation relating to how the mortgage loan is funded and serviced.

Nevada law requires the mortgage broker to fund the entire amount of the loan either out of his trust account directly to the borrower or through a third-party escrow agent. In most cases, the loan will be funded through a third-party escrow agent. An escrow is opened when money, documents, instruments and written instructions regarding the transaction (escrow instructions) are conditionally delivered by the principals to a third party (escrow agent). The escrow instructions set forth the conditions that must be satisfied or waived before the escrow agent may disburse your money to the borrower or the note holder. You have the right to review the escrow instructions. The escrow instructions should be consistent with your understanding of the loan transaction and should identify a specific promissory note and deed of trust ( or interest therein). Escrow "closes" when all the conditions of the escrow instructions have been waived or satisfied, the instruments have been recorded and the money was disbursed. You have the right

_Exhibit "C" pg 4_

## Collection of a promissory note and enforcement of a deed of trust involves some risk.

When the borrower on a mortgage loan fails to make required payments, the actions an investor can take, or a servicing agent on behalf of an investor, are determined by provisions of Nevada law and the documents and instruments evidencing the mortgage loan.  Frequently, the borrower who is delinquent on your loan is also delinquent on senior liens.  Even though you loan may be current, the borrower may fail to maintain the payments on senior liens, such as taxes, insurance premiums, and/or deeds of trust.  A breach of or default in connection with a senior lien by the borrower most likely constitutes an event of default under you deed of trust.  It is therefore important that the status of all senior liens be monitored.  Before investing in a junior deed of trust, you should determine the amount of debt service (payments) required to maintain the senior liens(s).  To protect your investment during any senior lien (loan) foreclosure, it may be necessary for you to maintain the payments (with your own funds) on all senior liens.  You may lose your interest in the property securing the loan if a senior lien forecloses on the property.

There will be other costs associated with enforcing a mortgage loan such as attorney's fees and processing fees, and there will likely be a delay of some months before the foreclosure process is complete.  Issues such as whether to commence a judicial or non-judicial foreclosure, deficiency judgments, rents and profits if the property is income-producing, and bankruptcy may also need to be addressed.

## If you have questions.

If you have any questions regarding any of the issues discussed in this disclosure form, discuss them with your mortgage broker, lawyer, financial advisor or trusted friend or family member. No one can guarantee that a particular investment will be risk free, but with information about the specific risks involved, you can take steps to minimize your risk.

Loan #489-99535

Investor Signature: X _Mary Randall_      9-27-07
Mary Randall

Investor Signature: _Paula Billau_
Paula Billau

Dated: _Sept 24th 2007_

x-hibit "c" pg 5

**SPECIALTY MORTGAGE CORP.**
**6160 PLUMAS STREET**
**RENO, NEVADA 89519**
**(775) 826-0809**

## MORTGAGE INVESTMENT DISCLOSURE FORM

IMPORTANT:  Pursuant to NRS 645B.185, each investor must sign and date a disclosure form before a mortgage broker or mortgage agent accepts money for the investment.  This form must be executed for each separate loan in which the investor invests money.  A mortgage broker or mortgage agent may not act as the investor's attorney in fact or agent in the signing or dating of this form and may not by agreement alter or waive these disclosure requirements.

Description of Loan:  #489-99535 Central and Buchanan

## BEFORE YOU INVEST IN A PROMISSORY NOTE SECURED BY AN INTEREST IN REAL PROPERTY, YOU SHOULD KNOW.......

The funding of a loan or purchase of a promissory note that is secured by a lien on real property (mortgage loan) is an investment that involves some risk.

An investment in a promissory note secured by a lien on real property usually through a deed of trust (mortgage loan or mortgage loan investment), like most investments involves risk that the investment will not perform as expected.  The mortgage broker with whom you are dealing is not a depository institution and a deed of trust investment is not secured by any depository insurance or insured or guaranteed by any agency of the State of Nevada or the Federal Government. Nevada law prohibits the mortgage broker with whom you are dealing from representing or even implying to you that he will ensure or guarantee that the investment will perform as expected. The borrower on the loan may default in required payments, and you may lose all or part of the principal amount you invested and/or the interest you expected to earn from the investment.

Some of the most significant factors that affect your risk in a mortgage loan investment include: (1) the knowledge, experience and integrity of the mortgage broker with whom you are dealing, (2) the market value and equity of the property that will secure the promissory note, (3) the borrower's financial standing and creditworthiness, (4) the escrow process involving the funding of the loan or purchase of the note, (5) the documents and instruments describing, evidencing and securing the loan, (6) the provisions regarding the collection and servicing of the loan, and (7) the provisions for enforcement of the deed of trust.

## You are entitled to information about the mortgage broker with whom you are investing.

**You are entitled to receive information regarding the mortgage broker with whom you are dealing from the Division of Mortgage Lending, which may be contacted at either one of the following locations:**

*Exhibit "C"*                                                                 *P9 6*

**Division of Mortgage Lending**
400 W. King Street, Ste 406
Carson City, Nevada 89703
(775) 684-7060

**Division of Mortgage Lending**
3075 E. Flamingo Street, Ste 104 A
Las Vegas, Nevada 89121
(702) 486-0780

**You have the right to request the mortgage broker with whom you are dealing to authorize the Division of Mortgage Lending to release to you the most recent financial statement of the mortgage broker on the file with the Division. \_\_\_\_YES, I would like to review a financial statement. \_\_X\_\_NO, I would not like to review a financial statement.**

**Disclosures required by subparagraphs (3) and (4) of paragraph (b) of subsection 6 of NRS 645B.185:**

**Has any disciplinary action been taken by the commissioner against the mortgage broker or any general partner, office of director of the mortgage broker within the preceding 12 months? \_\_\_\_\_ YES \_\_X\_\_ NO. If yes, describe below:**

_____

_____

**Has the mortgage broker or any general partner, officer or director of the mortgage broker been convicted within the preceding 12 months for violating any law, ordinance or regulation that involves fraud, misrepresentation or a deceitful, fraudulent or dishonest business practice? \_\_\_\_\_ YES \_\_X\_\_ NO. If yes, describe below:**

_____

_____

**You also have the right, pursuant to subsection 3 of NRS 645B.090, to ascertain from the Division of Mortgage Lending:**

- **Whether the Division of Mortgage Lending has disciplined the mortgage broker during the immediately preceding 5 years.**
- **The findings and results of any investigation against the mortgage broker pursuant to the provisions of chapter 645 B of NRS which was completed during the immediately preceding 5 years and which resulted in a finding by the Commissioner of Mortgage Lending that the mortgage broker committed a violation of a provision of Chapter 645B of NRS, chapter 645B of NAC or an order of the commissioner.**

## You are entitled to have a written appraisal of the property that is to secure your deed of trust investment as well as other information relating to the property.

The law requires the mortgage broker with whom you are dealing to obtain and make available for your inspection a written appraisal of the real property which is to secure the mortgage loan investment unless you specifically waive in writing your right to have the appraisal performed. An appraiser who is licensed or certified to perform real estate appraisals in this state must perform the appraisal if the property is located in this state. The mortgage broker with whom you are dealing is prohibited from performing the appraisal or providing any estimate or opinion

*Exhibit "C" pg 4*

In many cases, including those cases where the investments consist of "fractionalized" interests, i.e., ownership of less than 100% of the mortgage investment, the loan requires servicing by an authorized agent. Loan servicing includes collecting payments from borrowers, disbursing payments to investors or note holders, mailing of appropriate notices, monitoring the status of senior liens and encumbrances, maintaining adequate insurance coverage and coordinating foreclosure proceedings. The mortgage broker with whom you are dealing is authorized by Nevada law to act as the servicing agent for the mortgage loan he originate. It is recommended that all persons investing in a mortgage loan which will be serviced by a servicing agent execute a written servicing agreement that clearly specified the authority granted to the servicing agent. The servicing agreement should address issues such as: (1) the fees for servicing and how they are to paid; (2) the person who has the authority to instruct the trustee under the deed of trust to commence foreclosure proceedings in the event of a default: (3) how, in the case of a "fractionalized" note and deed of trust with multiple parties owning beneficial interests, the parties are to determine and direct the actions to be taken in the event of default or with respect to other matters that involve the enforcement of terms of the promissory note and/or deed of trust (Nevada law requires that the documentation pertaining to a note and deed of trust owned initially by more than one natural person included a provision by which record holders of 51% or greater specified percentage of the beneficial interests in the mortgage loan may direct certain actions that require direction or approval of the holders of beneficial interests); (4) the identity of the person responsible for holding the original promissory note and deed of trust; (5) how the loan servicing agreement may be terminated by the investors in the mortgage loan; (6) the right to obtain the names, addresses and phone numbers of other persons with beneficial interests in the loan; and (7) the monitoring of any senior liens.

A mortgage broker performing loan servicing has an obligation to account to the borrower and every investor for money collected and disbursed in the exercise of that function.

## You have the right to know whether the mortgage broker with whom you are dealing, or any relative of the mortgage broker, is acting in any capacity, or has any other interest, other than as a mortgage broker.

Nevada law required the mortgage broker with whom you are dealing to disclose to you whether he, or any relative of his, has any personal interest in the mortgage loan other that as a mortgage broker. For example, if the mortgage broker owns a 50% interest in the builder applying for a construction loan, the mortgage broker is required to disclose that interest to you. In addition, if a mortgage broker or relative of the mortgage broker is licensed as, conducts business as or holds a controlling interest or positions in (1) a construction control company, (2) an escrow agency, or (3) a title agent, a title insurer or an escrow officer of a title agent or title insurer, the mortgage broker must fully disclose that relationship to every investor, and may not require, as a condition to the acquisition or purchase of an interest in a mortgage loan, that the investor transact business with or use the services of the other business.

The mortgage broker, or a relative of the mortgage broker, has an interest in this loan in a capacity other that as mortgage broker. ___YES __✗__ NO. If yes, explain below:

_____

_____



of the value of the property that is to secure the mortgage loan investment, unless the mortgage broker is certified or licensed to perform the appraisal pursuant to chapter 645C of NRS. You are entitled to a copy of the appraisal upon request.

_____ I waive my right to an appraisal for this loan _____ I wish to review an appraisal for this loan

*Marv Randall*

Investor Signature *Paula Billau* Date *December 4th 2007*

In addition to a written appraisal, you are entitled to know whether the real property that will secure the loan is encumbered by any other liens and, if so, the priority of each such lien, the amount of debt secured by each such lien and the current status of that debt, including, without limitation, whether the debt is being paid or is in default.

The real property that will secure this loan is encumbered by any another liens. If other liens exist, describe, for each lien:

    Description:      N/A

    Loan No.

    Amount Encumbered:  *N/A*

    Priority:

    Current Status:

**You are entitled to review information relating to the financial standing and creditworthiness of the borrower and documentation relating to the mortgage loan. Pursuant to NAC 645B.080, you will be asked to complete a form in which you acknowledge that you had the opportunity to receive and review that information and documentation.**

**You are entitled to review documentation relating to how the mortgage loan is funded and serviced.**

Nevada law requires the mortgage broker to fund the entire amount of the loan either out of his trust account directly to the borrower or through a third-party escrow agent. In most cases, the loan will be funded through a third-party escrow agent. An escrow is opened when money, documents, instruments and written instructions regarding the transaction (escrow instructions) are conditionally delivered by the principals to a third party (escrow agent). The escrow instructions set forth the conditions that must be satisfied or waived before the escrow agent may disburse your money to the borrower or the note holder. You have the right to review the escrow instructions. The escrow instructions should be consistent with your understanding of the loan transaction and should identity a specific promissory note and deed of trust ( or interest therein). Escrow "closes" when all the conditions of the escrow instructions have been waived or satisfied, the instruments have been recorded and the money was disbursed. You have the right

*Exhibit "c"*          *Pg 9*

## Collection of a promissory note and enforcement of a deed of trust involves some risk.

When the borrower on a mortgage loan fails to make required payments, the actions an investor can take, or a servicing agent on behalf of an investor, are determined by provisions of Nevada law and the documents and instruments evidencing the mortgage loan. Frequently, the borrower who is delinquent on your loan is also delinquent on senior liens. Even though you loan may be current, the borrower may fail to maintain the payments on senior liens, such as taxes, insurance premiums, and/or deeds of trust. A breach of or default in connection with a senior lien by the borrower most likely constitutes an event of default under you deed of trust. It is therefore important that the status of all senior liens be monitored. Before investing in a junior deed of trust, you should determine the amount of debt service (payments) required to maintain the senior liens(s). To protect your investment during any senior lien (loan) foreclosure, it may be necessary for you to maintain the payments (with your own funds) on all senior liens. You may lose your interest in the property securing the loan if a senior lien forecloses on the property.

There will be other costs associated with enforcing a mortgage loan such as attorney's fees and processing fees, and there will likely be a delay of some months before the foreclosure process is complete. Issues such as whether to commence a judicial or non-judicial foreclosure, deficiency judgments, rents and profits if the property is income-producing, and bankruptcy may also need to be addressed.

## If you have questions.

If you have any questions regarding any of the issues discussed in this disclosure form, discuss them with your mortgage broker, lawyer, financial advisor or trusted friend or family member. No one can guarantee that a particular investment will be risk free, but with information about the specific risks involved, you can take steps to minimize your risk.

Loan #489-99535

Investor Signature: _Marv Randall_
Marv Randall

Investor Signature: _Paula Billau_
Paula Billau

Dated: _December 4th 2007_

_Exhibit "C"_              _Pg 9_

# SPECIALTY TRUST, INC.

Dear Shareholders/Noteholders,

Enclosed you will find the audited 2007 and unaudited first quarter 2008 financial statements for Specialty Trust, Inc. (the "Company").

As you are aware, the residential housing markets across most regions of the United States remain under duress. In addition, a severe credit crisis within the financial markets has added further strain on the general economy and has made capital raising for many entities and individuals substantially more difficult. Weaker consumer and business demand continues to provide additional pressures.

Many mortgage lending and financial services companies have experienced significant financial difficulties under these challenging conditions. One of the Company's key strengths during these troubled times remains its limited use of debt to finance its operations. At December 31, 2007, the Company maintained approximately $164.0 million of shareholder equity and only $110.8 million of debt. These numbers result in a "debt-to-equity" ratio of approximately .67 to 1.00. It is not uncommon for many banks and finance companies to have debt-to-equity ratios of 10.00 to 1.00 or more. The excessive use of debt has clearly been a driving factor behind the weak performance of many lenders.

Besides maintaining a conservative leverage policy, the Company continues to rely on its core fundamental principals including conservative underwriting and diversification. In addition, when owning properties associated with defaulted loans, Management focuses on seeking each property's "highest and best use", maintaining holding power and avoiding "fire sales". We continue to exhibit patience and monitor the residential real estate markets and hope for additional indications of stabilization during the year.

A resulting benefit of the current economic cycle is a favorable interest rate environment. This has led to a low cost of funds for the Company's lines of credit and on a relative basis, low market interest rates continue to reflect favorably upon the Company's dividend yield and the interest rates paid under its collateralized notes program.

Below are some of the Company's key performance indicators for the year 2007 and the early portion of 2008.

- Total 2007 revenues grew by 40.8% to $30.7 million from $21.8 million in 2006.
- Net income decreased to $14.7 million in 2007 from $16.4 million in 2006 (a 10.3% decline). A significant reason for this decline is due to the relatively large amount of non-recurring REO gains earned by the Company in 2006 and greater loan loss provisions taken in 2007.

Exhibit "D"      Pg 1

- Total assets rose from $200.3 million to $280.2 million during the same time period, resulting in a 39.9% growth rate.
- During 2007, the Board of Directors declared shareholder dividends of $1.20 per share of common stock resulting in a 9.2% annual dividend yield based upon the Company's current share price of $13.00 per share.
- The Company issued approximately $12.7M of common stock on September 30, 2007 at $13.0 per share.
- In January 2007, the Company issued $25 million of 30-year bonds to a New York investment firm and locked in a low borrowing cost during a historically favorable interest rate environment.  Also in January 2007, the Company closed on a new $30 million line of credit.  Since closing this facility, the Company has increased total borrowing capacity on its lines of credit by $17.0M from $46.5M to $63.5M.

In summary, we are pleased with the performance of the Company for the year 2007.  We continue to explore opportunities for the Company under all market conditions and we remain optimistic about the Company's prospects going forward.

On behalf of our Employees, Officers and Board of Directors, we would like to thank you for your ongoing support and confidence and for allowing us to oversee your investment.


Sincerely yours,


Nello Gonfiantini III
*Chaiman of the Board*

Robert E. Lawless
*Chief Financial Officer*

*Exhibit*

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

PAULA BILLAU

**DEFENDANTS**

SPECIALTY TRUST COMPANY, A MARYLAND CORPORATION,
ROBERT E. LAWLESS, RENFE WAGNER, LANCE WAGNER, SANDRA
WAGNER,BRUCE TEBBUTT,,SUSAN TEBBUTT, NELLO GONFIANTINI
*SEE CONTINUATION PAGE*

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

FRANK G. KING ,ESQ. 2255 MIRAMONTE CIRCLE WEST, UNIT B,PALM
SPRINGS, CA.92264  760-202-4007;760-699-5520

Attorneys (If Known)

UNKNOWN

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S.
Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship
of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from another district (specify):

☐ 6 Multi-
District
Litigation

☐ 7 Appeal to District
Judge from
Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No      ☑ **MONEY DEMANDED IN COMPLAINT:** $ 382,590.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Section 10(b) of 15 U.S.C.,78j(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**SACV11-00036 RNB**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☑ A.   Arise from the same or closely related transactions, happenings, or events; or
                      ☐ B.   Call for determination of the same or substantially related or similar questions of law and fact; or
                      ☐ C.   For other reasons would entail substantial duplication of labor if heard by different judges; or
                      ☐ D.   Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Arizona, Nevada, Maryland, Indiana, | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____    **Date** December ,2010

     **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

1   CONTINUATION PAGE OF CIVIL COVER SHEET

2

3   SPECIALTY FINANCIAL CORPORATION, A NEVADA CORPORATION,

4   SPECIALTY MORTGAGE CORPORATION, A NEVADA CORPORATION.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Name & Address:
*Frank G. King (SBN 35059)*
*2255 Mira Monte Circle*
*unit B*
*Palm Springs, CA 92264*
*760-202-4007*
*attorney for Plaintiff*

**FOR OFFICE USE ONLY**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| *Paula Billau* | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **SACV11-00036 RNB** |
| v. | |
| *Specialty Trust Company, a Maryland corporation, Robert E. Lawless, Renee Wagner, Sandra Wagner, Eddie Wagner, (see page 2)* DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S): __

A lawsuit has been filed against you.

Within __*21*__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____*FRANK G. KING*_____, whose address is _*2255 Miramonte Circle West, unit B, Palm Springs CA*_, 92264. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**AMY DAAVILA**

Dated: *January 7, 2011*          By: _____

                                            Deputy Clerk

                                            *(Seal of the Court)*

**FOR OFFICE USE ONLY**

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    **SUMMONS**

Continuation Page-Summons

SPECIALTY TRUST COMPANY, a MARYLAND CORPORATION

Robert E. Lawless, RENEE WAGNER, SANDRA WAGNER

BRUCE TEBBUTT, SUSAN TEBBUTT,

LANCE WAGNER

NELLO GONFIANTINI, SPECIALTY

FINANCIAL CORPORATION, A NEVADA

CORPORATION, SPECIALTY MORTGAGE

CORPORATION, A NEVADA CORPORATION.